[No. 23673-7-II. Division Two. November 19, 1999.]
THE STATE OF WASHINGTON, *Appellant,* v. THOMAS MURPHY, *Respondent.*

*Edward Holm, Prosecuting Attorney,* and *John M. Jones, Deputy,* for appellant.

*Robert Mason Quillian* and *Thomas Edward Doyle,* for respondent (appointed counsel for appeal).

HUNT, J. — The State of Washington appeals Thomas Murphy's sentences for one count of first degree burglary, five counts of theft of a firearm, and five counts of second degree unlawful possession of a firearm. The State contends that the trial court erred: (1) in calculating Murphy's offender score at zero for each offense; (2) in finding all five firearm theft convictions to be the same criminal conduct; (3) in finding all five firearm possession convictions to be the same criminal conduct; (4) in imposing a sentence below the standard range; and (5) in running the firearm theft and unlawful possession sentences concurrently with one another. Murphy cross-appeals, arguing that: (1) there was insufficient evidence to convict him on four of the five unlawful firearm possession counts; and (2) the trial court erred in running the burglary count consecutively to the firearm theft and unlawful possession counts. Both parties agree that the case should be remanded for resentencing. We affirm Murphy's convictions for unlawful possession, but remand for resentencing.

## FACTS

On the morning of January 23, 1998, then-16-year-old Murphy met Jesse Harkcom, Josh Wiest, and Jeremiah Olson in a high school parking lot in Olympia. Murphy and Harkcom decided to burglarize a house in Rochester in which Murphy had previously seen stereo equipment, firearms, Nintendo systems, and clothes. Directed by Murphy, Wiest drove Murphy, Harkcom, and Olson to the house. They first drove by the house and then proceeded to a diner, where Murphy called the house to see if anyone was home. Receiving no answer, the four drove back to the house. Murphy and Harkcom exited the vehicle and approached the house while the others drove down the road and waited. After breaking in, Murphy and Harkcom went upstairs,

where Harkcom took a Sony PlayStation and a shirt. They then went to the basement, found a gun cabinet, broke it open, and removed seven handguns[1] and ammunition, and placed them in a blanket. Murphy carried the guns out of the house; Harkcom carried out the PlayStation, the shirt, and a red box of ammunition. They rejoined Wiest and Olson, who had returned in the car, and sped away.

Murphy and Harkcom were seated in the backseat, with the stolen property between them. They sorted through it, removed the guns from the blanket, and passed them around to Wiest and Olson. After hiding the guns in the trunk of the car, the four drove to Olympia. At some point, they divided the handguns among them.

At trial, Harkcom testified that Murphy got two .22 caliber handguns. Wiest testified that he got one of the .22's, as well as a revolver. Olson testified that Murphy got a .22 and that some of the guns were given to friends of Wiest and Murphy. Murphy's friend, Joshua Stafford, testified that Murphy gave him a 9 mm handgun to hold for him. James Campbell testified that he saw Murphy with the 9 mm at Stafford's home. Police found none of the handguns in Murphy's possession.

A jury convicted Murphy of one count of burglary in the first degree,[2] RCW 9A.52.020, five counts of theft of a firearm, RCW 9A.56.300, and five counts of unlawful possession of a firearm in the second degree,[3] RCW 9.41-.040(1)(b). The trial court found that all the offenses encompassed the same criminal conduct and entered an of-

---

[1]The handguns were listed by the victim of the burglary as: a Sterling .22; an AMT Lightning .22; a Desert Eagle .357; a Colt .357; a Smith & Wesson .44 magnum; a Smith & Wesson .45; and a Smith & Wesson 9 mm. Murphy was not charged with the theft of either the Desert Eagle .357 or the Sterling .22, or unlawfully possessing the .357 Desert Eagle or the .22 AMT Lightning.

[2]The jury was unable to reach unanimity on a special verdict as to whether Murphy or an accomplice was armed with a deadly weapon at the time of the commission of the burglary, see RCW 9.94A.125, and a mistrial was declared on the special verdict.

[3]Murphy had a prior juvenile felony conviction for possession of stolen property in the second degree.

fender score of zero for each count.[4] The trial court imposed a sentence of 20 months for the burglary count, 14 months for each of the five firearm theft counts, and three months for each of the five unlawful possession counts. The court ran the five theft counts concurrently with one another and also ran the five unlawful possession counts concurrently with one another. These two groups of firearm counts were then run consecutively to one another and consecutively to the burglary count, for a total confinement period of 37 months.

## ANALYSIS
### I. Sufficiency of the Evidence

"A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person . . . owns, has in his or her possession, or has in his or her control any firearm" after having previously been convicted of a felony not qualifying as a serious offense. RCW 9.41.040(1)(b). This statute proscribes both actual and constructive possession. *See State v. Echeverria*, 85 Wn. App. 777, 783, 934 P.2d 1214 (1997). "[C]onstructive possession can be established by showing the defendant had dominion and control over the firearm . . . . The ability to reduce an object to actual possession is an aspect of dominion and control." *Echeverria*, 85 Wn. App. at 783 (citations omitted).

Sufficient evidence was adduced at trial to establish that Murphy actually possessed the five firearms charged by the State. Harkcom testified that he and Murphy removed the handguns from the gun cabinet and placed them onto the blanket. According to both Harkcom and Olson, it was Murphy who then carried the blanket containing *all* the guns from the house to the car. Inside the car, the blanket containing the guns was between Harkcom and Murphy in the backseat. Olson testified that he watched Murphy open

---

[4]Murphy's prior conviction for possession of stolen property in the second degree was assessed as one-half point and then rounded down to zero. *See* RCW 9.94A.360.

the blanket to expose the guns. Then, according to Harkcom, he and Murphy took the guns out of the blanket and passed them to Olson and Wiest in the front seat. Eventually, the four stopped, and, as Olson testified, they "all" put the guns in the trunk. Based on this evidence, a rational trier of fact could reasonably find, beyond a reasonable doubt, that Murphy actually possessed the five handguns charged by the State. *See State v. Williamson*, 84 Wn. App. 37, 46-47, 924 P.2d 960 (1996).[5]

## II. Sentencing
## A. Hard Time for Armed Crime Act

■■ Section 10 of the Hard Time for Armed Crime Act (HTACA), LAWS OF 1995, ch. 129,[6] added to the firearm theft statute, the provision that "[e]ach firearm taken in the theft under this section is a separate offense." RCW 9A.56.300(3). Similarly, Section 16 added to the unlawful firearm possession statute, the provision that "[e]ach firearm unlawfully possessed under this section shall be a separate offense." RCW 9.41.040(7). Section 16 also added that nothing in the HTACA

> shall ever be construed or interpreted as preventing an offender from being charged and subsequently convicted for the separate felony crimes of theft of a firearm or possession of a stolen firearm, or both, in addition to being charged and subsequently convicted under this section for unlawful possession of a firearm in the first or second degree. Notwithstand-

---

[5]We disagree with Murphy that Harkcom's uncorroborated testimony is of little value because he is an accomplice. Olson's testimony matched Harkcom's precisely and the jury was instructed:

> The testimony of an accomplice, given on behalf of the plaintiff, should be subject to careful examination in light of other evidence in the case, and should be acted upon with great caution. You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth.

*See* 11 WASHINGTON PRACTICE, WPIC § 6.05, at 136 (2d ed. 1994).

[6]The HTACA originated as an initiative and was enacted by the Legislature without amendment. *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 246, 955 P.2d 798 (1998).

ing any other law, if the offender is convicted under this section for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender shall serve consecutive sentences for each of the felony crimes of conviction listed in this subsection.

RCW 9.41.040(6).

## B. Consecutive versus Concurrent Sentences For the Firearm Counts

Under the Sentencing Reform Act of 1981 (SRA), LAWS OF 1981, ch. 137, the general rule is that "a person sentenced for two or more current offenses serves such sentences concurrently." *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998) (footnote omitted); *see also* RCW 9.94A.400(1)(a). In contrast, section 16 of the HTACA provides:

> *Notwithstanding any other law*, if the offender is convicted under this section for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender *shall serve consecutive sentences for each* of the felony crimes of conviction listed in this subsection.

RCW 9.41.040(6) (emphasis added). A general rule of statutory construction is that where one statutory provision deals with a subject in a general way and another deals with the same subject in a specific manner, the specific prevails. *State v. Lessley*, 118 Wn.2d 773, 781, 827 P.2d 996 (1992). Here, this portion of the HTACA deals more specifically with the sentencing of the firearm theft and unlawful possession offenses than does the more general SRA, which covers all types of offenses.[7] Thus, under the plain language

---

[7]The Legislature subsequently amended the HTACA to read:

If an offender is convicted under RCW 9.41.040 for unlawful possession of a firearm in the first or second degree and for the felony crimes of theft of a firearm or possession of a stolen firearm, or both, then the offender shall serve

of the HTACA, the trial court should have run each of Murphy's 10 firearm theft and unlawful possession convictions consecutively to one another.[8]

## C. The Burglary Count

Murphy argues that his sentence for first degree burglary should have been run concurrently with his sentences for unlawful possession of a firearm and theft of a firearm. The trial court found that an exceptional sentence was required for the first degree burglary count:

> I find an exceptional sentence. I think this is—if they run concurrent, that would only be 20 months. I don't even know at this point. It's too low for what they did. I find that the victim suffers substantially [sic], that this was thought out. But I guess what I'm saying is that it depends—and I want this understood—that this depends on the *Roose* case [*State v. Roose*, 90 Wn. App. 513, 957 P.2d 232 (1998)].[9]

"Where multiple current offenses are concerned, . . . an exceptional sentence may . . . consist of imposition of consecutive sentences where concurrent sentencing is otherwise the standard." *State v. Batista*, 116 Wn.2d 777, 784, 808 P.2d 1141 (1991). Imposition of an exceptional sentence requires written findings of fact and conclusions of law showing that there are substantial and compelling reasons to justify an exceptional sentence. RCW 9.94A.120(2), (3)

---

consecutive sentences for each conviction of the felony crimes listed in this subsection, *and for each firearm unlawfully possessed.*

Laws of 1998, ch. 235, § 2, codified at RCW 9.94A.400(1)(c) (emphasis added). We view this amendment, not as a change to the effect of the statute as previously worded, but rather as an underscore that the Legislature meant what it said originally in the plain language of section 16, as prefaced by "Notwithstanding any other law."

[8]It is the province of the Legislature, if it so chooses, not the appellate courts, to ameliorate any undue harshness arising from consecutive sentences for multiple firearm counts.

[9]Apparently the trial court read *Roose* as requiring the unlawful possession and firearm theft counts to run concurrently rather than consecutively and, for that reason, imposed the exceptional, consecutive sentence for the burglary in recognition that otherwise, Murphy's sentence would be too lenient.

and (17). *See also Batista,* 116 Wn.2d at 789; *State v. Kern,* 55 Wn. App. 803, 806, 780 P.2d 916 (1989). No such written findings or conclusions appear in the record before us. Obviously, in running the burglary sentence consecutively to the concurrent firearm sentences, the trial court intended to sentence Murphy to a longer period of incarceration than it understood to be mandated by the sentencing statutes. We cannot tell from the record, however, whether the trial court would still elect such an exceptional sentence in light of our reading of the HTACA as requiring consecutive sentences for all 10 of the firearm convictions.

### D. Sentencing Reform Act

The State contends that sections 10 and 16 of the HTACA override the SRA regarding the calculation of offender scores as well as the imposition of concurrent sentences. As the SRA stood on January 23, 1998, it commanded:

> Except [when a person is convicted of two or more serious violent offenses as defined in RCW 9.94A.030], whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.120 and 9.94A.390(2)(f) or any other provision of RCW 9.94A.390.

Former RCW 9.94A.400(1)(a) (footnote omitted). The State argues[10] that sections 10 and 16 of the HTACA require that: (1) Murphy's offender score on the burglary count, the five counts of theft of a firearm, and the five counts of

---

[10]The State may appeal the calculation of an offender score, *State v. Rodriguez,* 61 Wn. App. 812, 814-15, 812 P.2d 868 (1991), and "[a] departure from the standards in RCW 9.94A.400 (1) and (2) governing whether sentences are to be served consecutively or concurrently," RCW 9.94A.120(18).

unlawful possession, each be calculated at ten; and (2) the ten counts of theft of a firearm and unlawful possession run consecutively to each other. We agree with the State only as to charging and the running of sentences, but we disagree as to calculation of offender scores.

### E. Offender Score

■ The State argues that, because Murphy's convictions constitute 11 separate offenses for HTACA sentencing purposes, they are not the "same criminal conduct" for calculating his offender score. But recently, in *State v. Simonson*, 91 Wn. App. 874, 885-86, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016, 978 P.2d 1098 (1999), we specifically held that: (1) the HTACA did not override the SRA for calculation of offender scores; (2) the HTACA's amendment of the unlawful firearm possession statute[11] authorized the State merely to *charge* one count for each firearm; and (3) *sentencing* is still controlled by the SRA, which, for purposes of calculating offender scores, was not amended by the HTACA. *Simonson*, 91 Wn. App. at 885. Division Three reached the same conclusion with respect to the HTACA's amendment of the firearm theft statute[12] in *State v. Roose*, 90 Wn. App. 513, 517, 957 P.2d 232 (1998), which we hereby adopt. Accordingly, we hold that here, the trial court did not err in using the SRA's "same criminal conduct" provision, rather than HTACA's "separate offense" provisions, to calculate Murphy's offender score.

We affirm the convictions and remand for resentencing. If on remand the trial court imposes an exceptional sentence, it should be supported by written findings of fact and conclusions of law in accordance with RCW 9.94A-.120(2) and (3).

---

[11]"Each firearm unlawfully possessed under this section shall be a separate offense." RCW 9.41.040(7).

[12]"Each firearm taken in the theft under this section is a separate offense." RCW 9A.56.300(3).

ARMSTRONG, A.C.J., and SEINFELD, J., concur.

Review denied at 140 Wn.2d 1018 (2000).