IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | | |
|---|---|---|---|
| VLADIK BYKOV, | ) | No. 68321-7-I | |
| Appellant, | ) | | |
| | ) | DIVISION ONE | |
| v. | ) | | |
| | ) | | |
| HONORABLE STEVEN ROSEN and | ) | | |
| CITY OF SEATTLE, | ) | UNPUBLISHED OPINION | |
| | ) | | |
| Respondents. | ) | FILED: August 12, 2013 | |
| | ) | | |

BECKER, J. — At issue is a sentencing condition that prohibits appellant, who was convicted in municipal court of misdemeanor harassment, from using the Internet during the 343-day period of his suspended sentence. We conclude the prohibition is not an unconstitutional infringement on his free speech rights.

According to pleadings on file with the superior court, the present appeal arises from appellant Vladik Bykov's interactions with attorney Brian Fresonke. Fresonke represented Bykov's neighbor, a Seattle police officer, when the officer was sued by Bykov in 2010 for intentional infliction of emotional distress. The neighbor prevailed when the court dismissed Bykov's suit and entered a judgment of $1,600 in attorney fees against Bykov.

Bykov appealed. While the appeal was pending, Bykov began sending threatening e-mails to Fresonke. Fresonke contacted police. Police arrested Bykov on November 8, 2010. At a probable cause hearing in King County District Court the following day, Fresonke informed the court that for about six

months, Bykov had been sending him e-mails containing "thinly veiled threats of physical violence."

> Mr. Bykov made an express threat that I am going to end up like Rasputin. And he specifically mentioned a dagger. He told me there is still time if I wish to atone . . . . He said if I would vacate the judgment there will not be bad consequences. He said just because . . . my office is on the 32nd floor of my building that doesn't mean I'm safe from harm.

According to Fresonke, Bykov had sent him threatening e-mails attaching photographs of Fresonke's father and his father's home, filed a frivolous state bar complaint against Fresonke, and opened fraudulent e-mail accounts under Fresonke's name. From these accounts, according to Fresonke, Bykov sent messages to third parties and a number of Seattle law firms describing Fresonke as "armed and dangerous" and claiming that he was an "income tax evader."

The district court found probable cause for misdemeanor harassment and set bail at $25,000. Bykov was released from custody three days after his arrest, on November 11, 2010, when a relative posted his bail.

No criminal charges were filed against Bykov until February 2011, when the City of Seattle filed a criminal complaint in Seattle Municipal Court. The City alleged one count of cyberstalking under RCW 9.61.260, which occurred by means of an "electronic communication" sent by Bykov between July 26, 2010, and November 5, 2010, and one count of harassment under Seattle Municipal Code 12A.06.040, occurring on November 4, 2010.

In June 2011, the City filed an amended criminal complaint, charging 13 counts of cyberstalking and 5 counts of harassment. The cyberstalking charges

2

identified 12 electronic faxes sent anonymously to Fresonke's associates in the legal community and a fictitious web site created under Fresonke's name. The City alleged the web site was created on or before the date of Bykov's arrest on November 8, 2010, and reflected further changes made on November 11, 2010, the date Bykov was released from jail. The harassment charges identified four e-mails Bykov sent to Fresonke between September 17 and November 4, 2010, and a photograph Bykov allegedly took of Fresonke's father's home.

A jury trial lasting four days was held in municipal court in October 2011. On half-time defense motions, the court dismissed with prejudice 16 of the charges based on problems of proof. This left only two harassment charges for the jury, based on e-mails Bykov sent to Fresonke on November 2 and 4, 2010. The jury found Bykov guilty of one count of harassment based on the November 4 e-mail.

Bykov was sentenced to 364 days, 21 of which were to be served in jail immediately. The remaining 343 days were suspended. A suspended fine of $5,000 was imposed. The municipal court entered a number of conditions of the suspended sentence, including a mental health diagnosis and treatment, no contact with the victim, and a general prohibition on Internet use: "Do not use any device connected to the internet, be subject to search by probation, and cooperate by providing access."

Bykov, through counsel, filed a direct appeal to King County Superior Court. Acting pro se, he also petitioned for a writ of habeas corpus. He argued,

3

among other theories, that the Internet condition was an unconstitutional restraint on speech that denied him his right to counsel. He had been communicating with his attorney by e-mail, and he relied on the Internet to conduct legal research.

> It is unfair to prohibit Petitioner from using the Internet when he needs to do legal research and communicate with counsel. The prohibition is no different than a prohibition against using the U.S. Mail for communication.

In a declaration supporting his petition, Bykov explained that his attorney was slow to respond to voice messages because she did not have time to communicate "in real time over telephone," but she responded quickly to his e-mails. Over six months, he said, he had exchanged over 500 e-mail messages with his attorney and had communicated with her "as early as 6 am and as late as 12 am midnight." He claimed to have no way to exchange documents with his attorney other than by e-mail. He argued that requiring him to go to a brick and mortar law library to conduct his own legal research amounted to a "complete prohibition of access to the law" because there was not a law library near his home.

> As a practical matter, I have been denied access to legal material. It's simply impractical to research law other than through the Internet – unless one is rich and can afford to purchase the case books. And, taking a one and half hour trip to the library to look at a case or two – when the information is needed quickly – is effectively a complete prohibition of access to the law.

Bykov's habeas petition was consolidated with his direct appeal. The superior court heard argument in December 2011. Appointed counsel appeared for Bykov at the hearing. Bykov argued he was being singled out among

4

defendants found guilty of harassment by being completely prohibited from using the instrumentality he used to commit the crime:

> Normally when a person makes the crime of harassment, they say something to somebody . . . and never have I seen a judge order that person then not be able to talk to anybody. They haven't silenced them like that. And . . . what Judge Rosen has done by putting that condition on is silencing Mr. Bykov by not allowing him to get on the computer.

He also argued the prohibition should be lifted because it was not convenient:

"Mr. Bykov . . . lives far away and going to a law library is not convenient. Getting onto a computer is convenient."

The superior court entered findings of fact and conclusions of law denying Bykov's habeas petition. In conclusion of law 5, the court ruled that the Internet prohibition was a reasonable restriction to protect the public and that it was not a meaningful barrier to conducting legal research or communicating with his attorney:

> 5. Inasmuch as the basis for petitioner's conviction was an e-mail he sent to the victim, prohibiting petitioner from further use of the instrumentality of his crime is neither unreasonable nor unconstitutional.[ See State v. Riley, 121 Wn.2d 22, 36-38, 846 P.2d 1365 (1993) (sentence condition imposed on defendant convicted of Computer Trespass prohibiting owning computer or communicating with computer bulletin boards not unreasonable or unconstitutional).] The constitutional rights of a convicted defendant are subject to reasonable restrictions to protect the public.[ State v. Combs, 102 Wn. App. 949, 953, 10 P.3d 1101 (2000) (prohibition on using computer not unconstitutional).] Petitioner's ability to use a telephone or mail to contact his lawyer and to use a law library for legal research is not impaired. Petitioner has ample and adequate substitutes for use of the internet.

Bykov appeals from the superior court's decision to deny his petition for

habeas corpus. He requests relief in the form of striking the Internet restriction from his municipal court sentence.

Bykov contends the Internet restriction is an unlawful restraint because it infringes on his rights to freedom of speech, freedom of association, and freedom to receive information under the First Amendment of the U.S. Constitution and article I, section 5 of the Washington Constitution.

A person may prosecute a writ of habeas corpus in the superior court to challenge the lawfulness of government restraint. RCW 7.36.010; In re Pers. Restraint of Becker, 96 Wn. App. 902, 903, 982 P.2d 639 (1999), aff'd, 143 Wn.2d 491, 20 P.3d 409 (2001). This court reviews de novo the superior court's decision whether to grant a writ of habeas corpus. Butler v. Kato, 137 Wn. App. 515, 520-21, 154 P.3d 259 (2007). Review of constitutional questions is de novo. State v. Iniguez, 167 Wn.2d 273, 280, 217 P.3d 768 (2009).

Bykov's first argument is that the Internet restriction is impermissible as a prior restraint. Because the restriction on Bykov is a sentencing condition, it is not susceptible to analysis as a prior restraint. Rather, it belongs in that genre of cases where courts have considered the constitutionality of sentencing conditions that to some extent restrict a convicted defendant's future speech. See, e.g., Riley, 121 Wn.2d at 37-38; Combs, 102 Wn. App. at 953.

Bykov's second argument is that the Internet restriction is unconstitutional because it is not the least restrictive means of achieving the government's interest and therefore does not survive strict scrutiny. State interference with

6

fundamental rights is subject to strict scrutiny. State v. Warren, 165 Wn.2d 17, 34, 195 P.3d 940 (2008), citing Santosky v. Kramer, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982), cert. denied, 129 S. Ct. 2007 (2009). Sentencing conditions that interfere with fundamental constitutional rights must be reasonably necessary to accomplish the essential needs of the State and public order. Warren, 165 Wn.2d at 32; In re Pers. Restraint of Rainey, 168 Wn.2d 367, 374, 229 P.3d 686 (2010).

The appropriate standard of review for a sentencing condition is abuse of discretion, even where the sentencing condition infringes on a fundamental right. Rainey, 168 Wn.2d at 374. Rainey involved a lifetime no contact order between the appellant, convicted of first degree kidnapping, and his daughter, the kidnapping victim. He argued the order infringed on his fundamental parenting rights. The court held that even in such a case, where a sentencing condition interferes with a right as fundamental as the right to contact one's children, abuse of discretion remains the appropriate standard of review.

> Our prior case law has not definitively set forth the standard of review for a trial court's imposition of crime-related prohibitions. We generally review sentencing conditions for abuse of discretion. But we more carefully review conditions that interfere with a fundamental constitutional right, such as the fundamental right to the care, custody, and companionship of one's children. Such conditions must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." The extent to which a sentencing condition affects a constitutional right is a legal question subject to strict scrutiny. *Nevertheless,* because the imposition of crime-related prohibitions is necessarily fact-specific and based upon the sentencing judge's in-person appraisal of the trial and the offender, *the appropriate standard of review remains abuse of discretion.*

Rainey, 168 Wn.2d at 374-75 (emphasis added) (citations omitted).

Thus, while freedom of speech is a fundamental right, see Collier v. City of Tacoma, 121 Wn.2d 737, 745, 854 P.2d 1046 (1993), a trial court does not necessarily abuse its discretion by imposing some infringement upon speech as a sentencing condition. Bykov states his constitutional arguments in the abstract, citing many cases outside the context of criminal law. Most of his brief ignores the well-settled principle that a convicted defendant's constitutional rights are subject to infringement. State v. Ross, 129 Wn.2d 279, 287, 916 P.2d 405 (1996). An offender's usual freedom of association may be restricted if the restriction is reasonably necessary to accomplish the needs of the State and public order. State v. Bobenhouse, 143 Wn. App. 315, 332, 177 P.3d 209 (2008), aff'd, 166 Wn.2d 881, 214 P.2d 907 (2009). A sentencing condition "may prohibit a defendant's access to a means or medium through which he committed a crime." Rainey, 168 Wn.2d at 380, citing Riley, 121 Wn.2d at 37-38. "Limitations upon fundamental rights are permissible, provided they are imposed sensitively." Riley, 121 Wn.2d at 37; see also Combs, 102 Wn. App. at 953.

In Riley, the defendant was convicted of computer trespass. Conditions of his sentence prohibited him from owning a computer, associating with computer hackers, or communicating with computer bulletin boards—precursors to the Internet. Riley, 121 Wn.2d at 36. Our Supreme Court rejected the defendant's constitutional free speech arguments, and affirmed the conditions as reasonably related to the defendant's crime and as a reasonable means of discouraging

8

repeat offenses. Riley, 121 Wn.2d at 37-38.

Similarly, in Combs, the defendant was convicted of child molestation after using a computer in the course of his crime to show pornographic images to his victims and then requiring them to repeat the postures. Combs, 102 Wn. App. at 953. A sentencing condition prohibited him from using computers during his period of community supervision. The court rejected the defendant's arguments that this condition unconstitutionally infringed on his rights to free speech and expressive conduct. Combs, 102 Wn. App. at 953.

Bykov argues his case is factually distinct from Riley because in that case, the crime of computer trespass, by definition, could only be carried out by using a computer. Bykov argues that his own use of the Internet was only incidental to his conviction for harassment, a crime that may be committed without using a computer. This argument is not compelling. By his own account, Bykov was an avid user of the Internet who relied on the Internet's enabling of instant, immediate communication, 24 hours a day—for example, he claims he relied on this immediacy and frequency of communication for purposes of effectively communicating with this attorney. Bykov committed his crime using the Internet. Restricting him from further access to the instrumentality of his crime during his supervisory period was reasonably related to his crime, and it was a reasonable means of discouraging repeat offenses.

Bykov attempts to distinguish Riley and Combs by arguing that the Internet is more central to everyday life now than when those cases were

9

decided. But this fact only increases the Internet's potential as a tool for harassment. It lends support to the court's decision to prohibit Bykov's use of it while serving his suspended sentence.

At oral argument, Bykov argued for the first time that in measuring the reasonable necessity of the sentencing condition, this court may consider only the single e-mail for which Bykov was convicted of harassment.

This argument was raised too late to warrant our consideration. Unless we order otherwise, we must "decide a case only on the basis of issues set forth by the parties in their briefs." RAP 12.1. Where an issue is not raised until oral argument, it is not properly before the court and need not be considered. State ex rel. Quick-Ruben v. Verharen, 136 Wn.2d 888, 893 n.3, 969 P.2d 64 (1998); State v. Johnson, 119 Wn.2d 167, 170-71, 829 P.2d 1082 (1992).

The municipal court's prohibition of Internet use during the suspended sentence satisfies the standard applied in Riley and Combs. Imposing this condition was not an abuse of discretion. The superior court properly denied Bykov's petition for a writ of habeas corpus.

Affirmed.

Becker, J.

WE CONCUR:

Cox, J.

10